**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

MARTHA TORRES and JORGE ALBERTO ALMARAZ TREJO,

Plaintiffs,

vs.

JOHN KERRY, Secretary of State,

Defendant.

CASE NO. 12-CV-2309-LAB (JMA)

**ORDER DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION**

Plaintiffs are husband and wife. Martha lives in the United States, and Jorge lives in Mexico. Jorge applied for a visa to move to the United States and made it as far as an interview with a consular officer in Ciudad Juarez. His application was denied, however, because a 1974 conviction in the United States for drug trafficking gave the officer a reason to believe Jorge "is or has been an illicit trafficker in any controlled substance." 8 U.S.C. § 1182(a)(2)(C)(i).

Martha and Jorge challenge that denial on the ground that Jorge's conviction was set aside in 1979 under the Federal Youth Corrections Act, which they take to mean it cannot be used against him in any way, including in the immigration context. And they have some authority on their side. *See, e.g.*, *Matter of Zingis*, 14 I. & N. Dec. 621, 625 (BIA 1974) ("Under the provisions of the Federal Youth Corrections Act, the conviction, when it is set

aside, is totally set aside. It may not be used in any way. It is a greater remedy than a pardon.").

The biggest problem for Martha and Jorge is jurisdictional: the doctrine of consular nonreviewability insulates the decisions of consular officers from review. And the doctrine is well-established:

> The doctrine of nonreviewability of a consul's decision to grant or deny a visa stems from the Supreme Court's confirming that the legislative power of Congress over the admission of aliens is virtually complete . . . . [I]t has consistently been held that the consular official's decision to issue or withhold a visa is not subject either to administrative or judicial review. . . . Exercising jurisdiction over this case would, therefore, violate the long-recognized judicial nonreviewability of a consul's decision to grant or deny a visa.

*Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 970–71 (9th Cir. 1986). Martha and Jorge try to get around this by arguing that the Court *can* review a decision when, as here, the claim is that it's based on legal error. That's not really their argument, though, and if it were it would be a miss. *See Loza-Bedoya v. Immigration and Naturalization Service*, 410 F.2d 343, 347 (9th Cir. 1969) ("Though erroneous this Court is without jurisdiction to order an American consular official to issue a visa to any alien whether excludable or not."); *Chun v. Powell*, 223 F.Supp.2d 204, 206 (D.D.C. 2002) (holding that consular nonreviewability applies "where the decision is alleged to have been based on a factual or legal error").

What *is* Martha and Jorge's argument, then? It is that the consular official had no facially legitimate or bona fide reason to deny Jorge's visa application. Some background law is necessary here. There are some exceptions to consular nonreviewability, one of which arises "when the government has denied a visa if the government did not act 'on the basis of a facially legitimate and bona fide reason.'" *Patel v. Reno*, 134 F.3d 929, 932 n.1 (9th Cir. 1997) (*quoting Kleindienst v. Mandel*, 408 U.S. 753 (1972)). The Ninth Circuit subsequently made clear that this exception is only triggered "where the denial of a visa implicates the constitutional rights of American citizens." *Bustamante v. Mukasey*, 531 F.3d 1059, 1060 (9th Cir. 2008). For example, in *Mandel* the right at issue that triggered judicial review was the First Amendment right of American university professors to "receive

information and ideas" from a Belgian advocate of world communism who they'd invited to speak on various campuses. *Kleindienst*, 408 U.S. at 762. In such a scenario, there may be a "highly constrained" or "limited" judicial inquiry, but "[a]s long as the reason given is facially legitimate and bona fide the decision will not be disturbed." *Id.* at 1060–62.

A preliminary question, then, is whether the denial of Jorge's visa implicates Martha's constitutional rights. Under *Bustamante*, which is roughly identical to this case, it seems that it does: "Freedom of personal choice in matters of marriage and family life is, of course, one of the liberties protected by the due process clause." *Bustamante*, 531 F.3d at 1062. But Defendant urges the Court not to follow *Bustamante* because it appears to conflict with earlier Ninth Circuit caselaw, didn't address that earlier caselaw, and wasn't itself an en banc decision with the authority to overrule that caselaw. *See Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1091 (9th Cir. 2010) ("In short, lawfully denying Morales adjustment of status does not violate any of his or his family's substantive rights protected by the Due Process Clause.").

On top of that, the Court notes that other district courts have expressly declined to follow *Bustamante* because it is contrary to the law of their circuits. *See, e.g.*, *Ruiz-Herrera v. Holder*, 2013 WL 1136849 at *4 (N.D. Ga. Mar. 15, 2013) ("But numerous courts have held that neither deportation nor denial of a spouse's immigrant visa infringes upon that freedom."); *Jathoul v. Clinton*, 880 F.Supp.2d 168, 171–72 (D.D.C. 2012) ("While it may well be true that exclusion of her husband imposes burdens on their married life, the Court cannot find any constitutional violation."); *Gogilashvili v. Holder*, 2012 WL 2394820 at *5 (E.D.N.Y. June 25, 2012) ("No constitutional right of a citizen spouse is violated by deportation or denial of a visa application of his or her alien spouse."). *See also Bangura v. Hansen*, 434 F.3d 487, 496 (6th Cir. 2006) ("A denial of an immediate relative visa does not infringe upon their right to marry.").

There is a nuance to *Bustamante*, however, that Defendant misses in urging the Court to disregard it—and that at least one district court in the Ninth Circuit has deftly highlighted. *See Boyal v. Napolitano*, 2011 WL 864618 at *4 (E.D. Cal. Mar. 10, 2011). The plaintiffs in

*Bustamante*—a Mexican husband whose application for a permanent resident visa was denied, and his American wife—alleged a *procedural* due process violation, in essence by claiming the visa denial was in bad faith. The husband's visa was denied, they claimed, because he refused to become an informant for the Drug Enforcement Agency. *Bustamante*, 531 F.3d at 1061. Moreover, a consular officer said he had reason to believe the husband was a drug trafficker under § 1182(a)(2)(C)(I) but refused to share the information upon which this belief was based. *Id.* at 1060. It is in this context—the assertion of a procedural due process right—that the Ninth Circuit found in *Bustamante* that the limited inquiry authorized by *Mandel* was appropriate: "Presented with a procedural due process claim by a U.S. citizen, we therefore consider the Consulate's explanation for the denial of Jose's visa application pursuant to the limited inquiry authorized by *Mandel*." *Id.* at 1062. The many cases cited by Defendant to urge this Court to veer off course from *Bustamante* appear to address, instead, the lack of a *substantive* due process interest that a resident spouse has in the visa application of an alien spouse.

The point here is simply that the Defendant doesn't need to argue that *Bustamante* was wrongly decided or inconsistent with Ninth Circuit precedent. He can argue instead that it is distinguishable from this case (and from precedent) because it implicated a *procedural* rather than a *substantive* due process interest. This is how Judge England handled *Bustamante* in *Boyal*. *Boyal*, 2011 WL 864618 at *4 ("In . . . *Bustamante* . . . the plaintiffs . . . did not claim a substantive due process protection for their right to reside together as spouses, but merely for constitutionally adequate procedures before the government denies that right."). Judge England reasoned, in other words, that constitutional rights are only implicated in this context, and review under *Mandel* triggered, when the claim is that the denial of visa was procedurally defective. If, instead, a plaintiff simply objects to the conclusion the consular office reached, the claim is substantive and *not* constitutionally cognizable—and *Mandel* review is *not* triggered.

So what kind of claim are Martha and Jorge advancing, a procedural or substantive one? The Court sees it as substantive. The consular officer, in their eyes, made an

erroneous decision that deprived them of the ability to live together. The interest they assert isn't a procedural one, but rather Martha's "personal choice to want to live with her husband in the United States," which they claim "is protected by the Due Process Clause and gives this Court jurisdiction." (Doc. No. 6 at 7.) That is a substantive claim, and a mistaken one at that. *Morales-Izquierdo*, 600 F.3d at 1091. Considering that no constitutional rights are implicated here, the Court finds it has no jurisdiction to review the consular officer's denial of Jorge's visa application. *See Boyal*, 2011 WL 864618 at *5. This means that Martha and Jorge aren't even entitled to the *Mandel* inquiry that asks whether the officer's decision was based upon a facially legitimate or bona fide reason. The Defendant's motion to dismiss for lack of jurisdiction is therefore **GRANTED**.

Even assuming the Court has jurisdiction here, it would find that the consular officer's decision was facially legitimate and bona fide. The reason given for the decision—the belief that Jorge was a drug trafficker—is indisputably a statutory basis for inadmissibility, and therefore "plainly a facially legitimate reason." *Bustamante*, 531 F.3d at 1062; 8 U.S.C. § 1182(a)(2)(C)(i). And in arguing that the consular officer's decision reliance on Jorge's 1974 conviction was legally erroneous, Martha and Jorge are as much as conceding that *that* was the true basis of his decision, rather than some other, unspoken motive. There is no allegation here that the consular officer acted in bad faith such that his given reason for the decision was not his true, bona fide reason. *Bustamante*, 531 F.3d at 1062. Finally, the only circuit to recently address head-on the question whether a conviction expunged by the Federal Youth Corrections Act can still be the basis for denying an alien admission has held that it can:

> Because expunction does not entitle its recipient to the concealment of a conviction, neither does it conceal the facts underlying a conviction. Expunction means that *the conviction itself* will not stand as an impediment to a youthful offender in the near future. We conclude that expunction does not entitle petitioner to secret the fact of his conviction, or the facts underlying that conviction, from immigration officials.

*Castano v. I.N.S.*, 956 F.2d 236, 239 (11th Cir. 1992). The Ninth Circuit has cited *Castano* in finding that the facts underlying a conviction expunged under the Federal Youth

Corrections Act are relevant to a "good moral character" determination for naturalization purposes. *United States v. Hovsepian*, 359 F.3d 1144, 1159 (9th Cir. 2004). These are just some additional reasons, but by no means necessary ones, to find that Martha and Jorge's complaint fails to state a claim upon which relief can be granted. This case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

DATED: April 3, 2013

HONORABLE LARRY ALAN BURNS
United States District Judge